UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

A.M. GOODALE,

                          Plaintiff,

                                                    **Hon. Hugh B. Scott**

              v.

                                                    05CV616S

                                                    **Report**
                                                    **&**
H.W. WETZEL, JR.,                                   **Recommendation**
KATHLEEN MURRAY, et al.,

                          Defendants.

_____

        This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(C)

(Docket No. 20, Mar. 7, 2007).  The instant matter before the Court is defendant Kathleen

Murray's motion for summary judgment (Docket No. 37[1]) to dismiss the Complaint as to her.

        Responses to this motion were due by December 8, 2008, and any reply was due by

December 15, 2008, with the motion then deemed submitted (without oral argument) on

December 15, 2008 (Docket No. 42).

                                    **BACKGROUND**

        Plaintiff, an inmate proceeding pro se, initially sued the New York State Department of

Correctional Services (hereinafter "DOCS"), various prison officials and employees (in their

_____

        [1]In support of these motions, defendant Murray filed her declaration (with exhibits),
Docket No. 38; the Declaration of Dr. John Alves, with exhibits, Docket No. 39; Murray's
Statement of Undisputed Facts, Docket No. 40; and her Memorandum of Law, Docket No. 41.
Plaintiff has not filed a response in opposition to this motion.

official and individual capacities) for inadequate medical treatment, excessive use of force and

failure to protect him in separate incidents while he was incarcerated at Southport Correctional

Facility ("Southport") on February 20, March 9, and November 26, 2004.  He seeks monetary

damages and injunctive relief[2] in this action.  (Docket No. 1, Compl.)

This Court rendered a Report & Recommendation (Docket No. 22), which was adopted

by Judge Skretny (Docket No. 23), on other defendants' motions to dismiss (Docket Nos. 12, 15,

17); familiarity with that Report and that Order is presumed.  Among the parties that remain

following that Order is defendant Murray and claims alleged against her in her individual

capacity (see Docket No. 23, Order at 2 n.1)[3].  According to the current Amended Scheduling

Order in this case (Docket No. 36), dispositive motions were due by November 14, 2008.  No

other defendant has filed a dispositive motion.

*February 20, 2004, Incident*

Pertinent to Murray's motion is the incident that allegedly occurred on February 20, 2004,

and the level of treatment provided to plaintiff following that incident.  Plaintiff alleges that

defendants Sergeant H.D. Wetzel and Corrections Officer Randy Van Ness assaulted him, while

---

[2]Plaintiff sought installation of cameras on all companies in Southport, removal of
defendants from their respective positions, enjoining defendant Lt. Richard Donahue from
conducting tier hearings involving plaintiff, and an investigation of the three incidents alleged in
the Complaint, Docket No. 1.

[3]After this initial round of dispositive motions, the following defendants remain (in some
capacity, for at least one claim) in this action: Sgt. H.D. Wetzel, Sgt. J. Meehan, officer David
Alderman, officer Randy Van Ness, Sgt. Mark Shumaker, officer Dominic Moffe, officer Dale
Hillard, Lt. Richard Donahue, and Murray, see Docket No. 22, Report & Rec. at 8; Docket
No. 23, Order at 2-3, n.1.  These defendants filed a joint Answer on July 3, 2007, Docket No. 25.

defendants Sergeant J. Meehan and Corrections Officer David Alderman watched or did not intervene to prevent it (Docket No. 1, Compl. at pages 9 of 20, 10 of 10, First Claim).

Plaintiff claims that, when he complained of the pain from the assault, defendant Nurse Kathleen Murray declined to prescribe Tylenol or refer plaintiff to a physician hours after the assault.  Plaintiff alleges that he was later hospitalized for a hairline fracture of his rib, which required administration of painkillers (id. at page 9 of 20).

*Murray's Motion*

Defendant Murray, a registered nurse at Southport, was informed, at approximately 2:30 pm on February 20, 2004, that another nurse (Nurse Bellinger) examined plaintiff following the use of force earlier that afternoon (Docket No. 40, Murray Statement of Fact ¶¶ 1-2; Docket No. 38, Murray Decl. ¶¶ 1, 5, Ex. A (use of force report), Ex. B (ambulatory health report)). Nurse Bellinger reported that plaintiff has scrapes on his right hand, wrist, and right upper lip and had old bruising that Bellinger advised plaintiff to cleanse (Docket No. 40, Murray Statement ¶ 3; Docket No. 38, Murray Decl. ¶ 5).  No other injuries or complaints were noted by plaintiff and plaintiff denied having any other injury at the time immediately following the use of force incident (Docket No. 40, Murray Statement ¶ 4; Docket No. 38, Murray Decl. ¶ 6).  During 8:30 pm medication rounds that evening, Murray examined plaintiff; plaintiff was agitating and pacing his cell but did not appear to Murray to be in acute distress (Docket No. 40, Murray Statement ¶ 5; Docket No. 38, Murray Decl. ¶ 8).  Plaintiff then complained of pain in the left kidney area and informed Murray that he "double[d] up" on his pain medication, Pepeogesic.  He said that he could urinate, however, and had no blood in his urine.  (Docket No. 40, Murray Statement ¶ 6, Ex. B; Docket No. 38, Murray Decl. ¶ 9.)  Plaintiff asked for Tylenol from Murray

but she refused it because he had taken double the recommended dosage of pain medication (Docket No. 40, Murray Statement ¶ 7; Docket No. 38, Murray Decl. ¶ 10).  Taking a double dose may have an adverse reaction for plaintiff (Docket No. 39, Alves Decl. ¶ 7).  Upon examining plaintiff, Murray did not see an edema on his left flank or any signs of injury or trauma (Docket No. 40, Murray Statement ¶ 8; Docket No. 38, Murray Decl. ¶ 11).  Murray advised plaintiff to rest, urinate as much as possible, and to take medication only as prescribed (Docket No. 40, Murray Statement ¶ 9; Docket No. 38, Murray Decl. ¶ 12).  According to the Ambulatory Health Record (Docket No. 38, Ex. B), plaintiff then was up and about in his cell without manifesting any signs of distress (Docket No. 40, Murray Statement ¶ 11).  Murray denies being deliberately indifferent to plaintiff's medical needs (Docket No. 38, Murray Decl. ¶ 16).

Dr. John Alves is a doctor and was facility health services director at Southport at the time of this incident (Docket No. 40, Murray Statement ¶ 14; Docket No. 39, Alves Decl. ¶ 1).  Dr. Alves reviewed plaintiff's medical records and found that he had a history of a chronic condition, Ureteropelvic Junction Obstruction ("UJO"), not caused by any trauma he may have suffered in February 20, 2004 (Docket No. 39, Alves Decl. ¶ 8, Ex. A, Bates Nos. 188-90 (June 2005 examination); Docket No. 40, Murray Statement ¶ 16).

Plaintiff was seen by a Nurse Nelson on February 21, 2004, during the routine morning sick-call, complaining of back pain near his kidneys and dysuria (that is, painful urination) (Docket No. 40, Murray Statement ¶ 17; Docket No. 39, Alves Decl. ¶ 9).  On February 22, 2004, plaintiff again complained of right flank pain and painful urination, and he was scheduled for a urinalysis and urine culture and sensitivity test (Docket No. 40, Murray Statement ¶ 18; Docket

4

No. 39, Alves Decl. ¶ 10).  Plaintiff was seen again in the early morning of February 23, 2004,

complaining of pain in his left flank area and he claimed that he could not urinate for the past

three days (Docket No. 40, Murray Statement ¶ 19; Docket No. 39, Alves Decl. ¶ 11).  Nurse

Nelson then contacted the Erie County Medical Center but after ten minutes plaintiff began

rolling around, complaining of pain and crying (Docket No. 40, Murray Statement ¶ 20; Docket

No. 39, Alves Decl. ¶ 12).  He stood up five minutes later and talked with correction officers.  He

was medicated with Toradol (30 mg.) and at 3:00 am was transferred to the emergency room of

St. Joseph's Hospital.  (Docket No. 40, Murray Statement ¶ 21; Docket No. 39, Alves Decl. ¶

13.)  St. Joseph's Hospital determined that plaintiff suffered from no acute disease and had no

problems with urination and he was returned to Southport (Docket No. 40, Murray Statement

¶ 22; Docket No. 39, Alves Decl. ¶ 14).  Dr. Alves examined plaintiff on February 24, 2004,

noting from a CAT scan that plaintiff had a dilated right pelvicaliceal system, possibly

representing the chronic UJO obstruction and a hairline fracture in his twelfth rib (Docket No.

40, Murray Statement ¶ 23; Docket No. 39, Alves Decl. ¶ 15).  Dr. Alves referred plaintiff to a

urologist for treatment of the chronic urinary obstruction and found that the rib fracture required

no medical treatment as it was a non-displaced hairline fracture (Docket No. 40, Murray

Statement ¶ 24; Docket No. 39, Alves Decl. ¶ 16).

From his review of plaintiff's medical records from February 20-24, 2004, Dr. Alves

concludes that Murray's treatment on February 20 was appropriate nursing care (Docket No. 39,

Alves Decl. ¶ 17) and that plaintiff did not demonstrate signs or symptoms of acute distress to

require treatment by a doctor or outside of the facility (id. ¶ 18).  Dr. Alves concludes that

plaintiff did not require immediate medical attention on the night of February 20, 2004 (id. ¶ 20), and Murray was not deliberately indifferent to plaintiff's medical needs on that night (id. ¶ 21).

Murray argues that plaintiff's complaints of pain in his kidney and urination problems did not rise to the level to meet the objective component of the deliberate indifference standard (Docket No. 41, Murray Memo. at 6-8), nor did plaintiff establish the subjective element for deliberate indifference under the Eighth Amendment (id. at 8-11). Alternatively, Murray contends that she should enjoy qualified immunity because she never acted in a objectively unreasonable manner toward plaintiff (id. at 11-13) and current case law, see Rodriguez v. Mercado, No. 00 Civ. 8588, 2002 U.S. Dist. LEXIS 16057, at *23-25 (S.D.N.Y. Aug. 28, 2002) (Maas, Mag. J.), holds that back pain alone is not sufficiently serious to meet the objective component to put Murray on notice that she was violating plaintiff's constitutional rights (id. at 13).

Plaintiff, currently incarcerated in a psychiatric center (see Docket No. 24, Order at 2; cf. Docket No. 37, Def. Motion Cert. of Service), has not responded to Murray's motion.

## DISCUSSION

I.      Standard of Review

Summary judgment is appropriate only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Ford v. Reynolds, 316 F.3d 351, 354 (2d Cir. 2003); Fed. R. Civ. P. 56(c). The party seeking summary judgment has the burden to demonstrate that no genuine issue of material fact exists. In determining whether a genuine issue of material fact exists, a court must examine the

evidence in the light most favorable to, and draw all inferences in favor of, the non-movant.

Ford, supra, 316 F.3d at 354.  "A dispute regarding a material fact is genuine 'if the evidence is

such that a reasonable jury could return a verdict for the nonmoving party.' " Lazard Freres &

Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1535 (2d Cir.) (quoting Anderson v. Liberty

Lobby, 477 U.S. 242, 248 (1986)), cert. denied, 522 U.S. 864 (1997).  While the moving party

must demonstrate the absence of any genuine factual dispute, Celotex Corp. v. Catrett, 477 U.S.

317, 323 (1986), the party against whom summary judgment is sought, however, "must do more

than simply show that there is some metaphysical doubt as to the material facts. . . . [T]he

nonmoving party must come forward with specific facts showing that there is a genuine issue for

trial." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986) (emphasis

in original removed); McCarthy v. American Intern. Group, Inc., 283 F.3d 121, 124 (2d Cir.

2002); Marvel Characters v. Simon, 310 F.3d 280, 285-86 (2d Cir. 2002).

Rule 56(d) allows the Court to "determine what material facts are not genuinely at issue.

The court should so determine by examining the pleadings and evidence before it and by

interrogating the attorneys.  It should then issue an order specifying what facts–including items of

damages or other relief–are not genuinely at issue.  The facts so specified must be treated as

established in the action." Fed. R. Civ. P. 56(d)(1) (effective Dec. 1, 2007).  When the Court

cannot grant summary judgment on the entire case, "it is empowered, when it would be

practicable to save time and expense and to simplify the trial, to issue an order that specifies the

facts that appear without substantial controversy," 10B Charles A. Wright, Arthur R. Miller &

Mary Kay Kane, Federal Practice and Procedure § 2737, at 311-12 (Civil 3d ed. 1998) (footnote

omitted).  Under Rule 56(d)(1), the Court does not enter judgment on part of a claim or grant

partial relief; this rule merely allows the Court to specify issues that are not controverted, id. at 316, 318, and is better referred to as a "partial summary adjudication" to avoid the confusion with a judgment, id. at 324, 322-24.  If the Court determines that entering partial summary judgment does not materially expedite the adjudication, the Court may decline to do so, id. at 319.

The Local Civil Rules of this Court require that movant and opponent each submit "a separate, short, and concise" statement of material facts, W.D.N.Y. Loc. Civ. R. 56.1(a), (b). The movant is to submit facts in which there is no genuine issue, id. R. 56.1(a), while the opponent submits a statement of material facts as to which it is contended that there exists a genuine issue to be tried, id. R. 56.1(b).  "Each statement of material fact by a movant or opponent must be followed by citation to evidence which would be admissible, as required by Federal Rule of Civil Procedure 56(e)," with citations identifying "with specificity" the relevant page or paragraph of the cited authority, id. R. 56.1(d).  All material facts stated in movant's statement that are not controverted by opponent's counter-statement shall be deemed admitted, id. R. 56.1(c).  The purpose of these statements, and the appendix of supporting evidence, id. R. 56.1(d), is to summarize and highlight for the Court the material factual issues, the authority in the evidentiary record for the purported facts, and whether the parties believe they are in dispute.

Complicating this is the fact that plaintiff is proceeding pro se as an inmate (currently in a psychiatric center, see Docket No. 24, Order at 2; Docket No. 37, Def. Cert. of Service) in pursuing his action.  As such, the pleadings of a pro se plaintiff are to be liberally construed, see Haines v. Kerner, 404 U.S. 519 (1972) (per curiam), while under this Court's rules he is responsible for becoming familiar and complying with the Federal Rules of Civil Procedure and

the Court's Local Rules of Civil Procedure (including the rules regarding statements of fact on motions for summary judgment), with failure to comply with either set of rules possibly resulting in dismissal of the case with prejudice, W.D.N.Y. Loc. Civ. R. 5.2(e).  The Local Rules further provide notice to the pro se litigant that under Rule 56 a plaintiff may not oppose summary judgment simply by relying upon his earlier pleadings, "[r]ather, plaintiff must submit evidence, such as witness statements or documents, countering the facts asserted by the defendant and raising issues of fact for trial," id. R. 56.2.  "Any issue of fact that plaintiff wishes to raise in opposition to the motion for summary judgment must be supported by affidavits or by other documentary evidence contradicting the facts asserted by defendant.  If plaintiff does not respond on time with affidavits or documentary evidence contradicting the facts asserted by defendant, the Court may accept defendant's factual assertions as true.  Judgment may then be entered in defendant's favor without a trial," id.; see also Irby v. New York City Transit Authority, 262 F 3d 412 (2d Cir. 2001.  Plaintiff here was given due notice under Local Civil Rule 56.2 (Docket No. 37, Notice of Motion at 1-2) and he did not request additional time or note his transfer to another facility while defendant's motion was pending.

II.     Substantive Legal Standard

        Pertinent to his claims against Murray and Murray's present motion, plaintiff raises claims under the Eight Amendment for deliberate indifference.

        A.      Eighth Amendment Deliberate Indifference

        Under the Eighth Amendment, in order to state a claim for inadequate medical treatment, plaintiff must allege that a defendant acted with "deliberate indifference to [a] serious medical need," LaGrange v. Ryan, 142 F. Supp. 2d 287, 293 (N.D.N.Y. 2001); see Estelle v. Gamble,

429 U.S. 97, 104 (1976); see also Gregg v. Georgia, 428 U.S. 153, 173 (1976) (the Eighth

Amendment prohibits infliction of "cruel and unusual punishments" which includes punishments

that "involve the unnecessary and wanton infliction of pain") (citations omitted); Hathaway v.

Coughlin, 37 F.3d 63, 66 (2d Cir. 1994), cert. denied sub nom. Foote v. Hathaway, 513 U.S.

1154 (1995).  "To establish an unconstitutional denial of medical care, a prisoner must prove

'deliberate indifference to [his] serious medical needs.'" Hathaway, supra, 37 F.3d at 66 (quoting

Estelle, supra, 429 U.S. at 104).  Plaintiff must prove that "the prison official knew of and

disregarded the plaintiff's serious medical needs," Chance v. Armstrong, 143 F.3d 698, 703 (2d

Cir. 1998) (citing Farmer v. Brennan, 511 U.S. 825, 837 (1994); Hathaway, supra, 37 F.3d at 66).

The Chance court also noted that "it is well-established that mere disagreement over the proper

treatment does not create a constitutional claim.  So long as the treatment given is adequate, the

fact that a prisoner might prefer a different treatment does not give rise to an Eighth Amendment

violation," Chance, supra, 143 F.3d at 703.  Mere negligent treatment or malpractice upon a

suspect, however, does not create an Eighth Amendment violation, see Corby v. Conboy,

457 F.2d 251, 254 (2d Cir. 1972).

The deliberate indifference claim has two elements:  an objective component, that the

deprivation must be sufficiently serious; and a subjective component, that the defendant official

must act with sufficiently culpable state of mind.  Hathaway, supra, 37 F.3d 66.  "Sufficiently

serious" for the objective component contemplates "a condition of urgency, one that may

produce death, degeneration, or extreme pain." Nance v. Kelly, 912 F.2d 605, 607 (2d Cir. 1990)

(Pratt, J., dissenting) (quoted in Hathaway, supra, 37 F.3d at 66).  Plaintiff needs to prove that

defendants wantonly intended to cause him to suffer.  Wilson v. Seiter, supra, 501 U.S. at 302.

10

B.      Qualified Immunity

Alternatively, Murray contends that she is entitled to qualified immunity even if her actions violated plaintiff's Eighth Amendment rights.  Qualified immunity shields officials from damages when their conduct does not reach a clearly established constitutional right and depends upon the objective reasonableness of the official's conduct and whether the official "fairly be said to know that the law forbade [that official's] conduct," Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982) (Docket No. 41, Murray Memo. at 11, 12).

III.    Application

A.      Deliberate Indifference

Plaintiff claims that Murray failed to furnish Tylenol on February 20, 2004, when he complained of pain.  From the record discussed above, however, plaintiff self medicated and took twice the dosage of another, prescription pain medication he already had when he requested Tylenol; taking Tylenol on top of the medication he already consumed might have been more harmful to plaintiff than beneficial (Docket No. 39, Alves Decl. ¶¶ 6, 7).  He showed no acute distress or other manifestation of a serious medical condition (see id. ¶ 17; Docket No. 41, Murray Memo. at 7-8).  Further, requesting an over-the-counter pain reliever like Tylenol does not indicate "extreme pain," see Nance, supra, 912 F.2d at 607 (Pratt, J., dissenting); Hathaway, supra, 37 F.3d at 66, that would satisfy the objective component of the deliberate indifference claim.  Plaintiff made subsequent complaints about back pain (Docket No. 38, Murray Decl., Ex. B).  These complaints do not rise to the level of a sufficiently serious deprivation to meet the objective component for deliberate indifference under the Eighth Amendment, see Chance, supra, 143 F.3d at 702; Hemmings v. Gorczyk, 134 F.3d 104, 108 (2d

11

Cir. 1998) (the alleged deprivation must be sufficiently serious, a condition of urgency, one that may produce death, degeneration, or extreme pain) (Docket No. 41, Murray Memo. at 6-7). Furthermore, plaintiff has not established the subjective component of deliberate indifference, that Murray had the sufficiently culpable state of mind that she wantonly intended to cause plaintiff to suffer.  On this basis, Murray's motion for summary judgment should be **granted**.

      B.     Qualified Immunity

      Given the discussion above surrounding plaintiff's sole claim against Murray, the Court need not reach her contention under qualified immunity.  If this Court were to do so, Murray has established that she acted in an objectively reasonable manner in treating plaintiff on February 20, 2004.  Further, as discussed previously, the deliberate indifference standard as of that date would not hold Murray liable for not treating plaintiff's back complaints that night in order to expose her to liability.  Thus, if considering the alternative qualified immunity grounds, Murray's motion for summary judgment should be **granted**.

IV.     Remaining Claims and Parties

      Assuming that this Report & Recommendation is adopted, plaintiff still has claims pending against defendants Wetzel, Meehan, Alderman, Van Ness, Shumaker, Moffe, Hillard, and Donahue (see Docket No. 22, Report & Rec. at 8; Docket No. 23, Order at 2-3, n.1) in their respective individual capacities for their roles in the alleged assaults of plaintiff in February, March, and November 2004 that were not addressed in this or prior dispositive motions.  Given that the supervisory and departmental defendants have been dismissed from this action (Docket No. 23, Order at 3), plaintiff's sole relief is for monetary damages against the remaining defendants.

## CONCLUSION

Based upon the above, it is recommended that defendant Kathleen Murray's motion for summary judgment and dismissal of the Complaint (Docket No. 37) be **granted**.


Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten (10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) and W.D.N.Y. Local Civil Rule 72.3(a).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME OR TO REQUEST AN EXTENSION OF SUCH TIME WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT DISTRICT COURT'S ORDER ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on de novo review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance.  See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72.3(a)(3), "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  **Failure to comply with the provisions of Rule 72.3(a)(3) may result in the District Court's refusal to consider the objection.**

SO ORDERED.

_/s/ Hugh B. Scott_
_____
Hon. Hugh B. Scott
United States Magistrate Judge

Dated: Buffalo, New York
         January 16, 2009

14